Judgment rendered August 9, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,115-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

JENNIFER FRIERSON                              Plaintiff-Appellant

versus

STEPHENS, INC.                                 Defendant-Appellee

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 636,969

Honorable Michael A. Pitman, Judge

* * * * *

M. F. "RICK" FAYARD                            Counsel for Appellant

JONES WALKER LLP                               Counsel for Appellee
By: Tyler J. Rench

* * * * *

Before STEPHENS, COX, and MARCOTTE, JJ.

COX, J., concurs with written reasons.

**STEPHENS, J.**

Plaintiff, Jennifer Frierson, appeals a judgment dismissing her petition for a preliminary mandatory injunction and permanent mandatory injunction that would order the defendant, Stephens, Inc. ("Stephens"), to comply with her request to transfer the assets of "investment accounts" registered in her husband's name, C.N. "Tannie" Frierson, into two new Stephens accounts in her name pursuant to her powers of attorney over the accounts. Several months earlier, Mr. Frierson executed the powers of attorney ("POAs") giving Jennifer control over those accounts when he discovered he was terminally ill; several months later, Jennifer made the request to transfer the assets when Mr. Frierson's death was imminent.

After review, we reverse the judgment of the trial court and remand to the district court for further proceedings.

## FACTS

Jennifer and C.N. "Tannie" Frierson were married in 1998, and remained together for 25 years until his death. They had two children during the marriage, and Tannie had three children from his previous marriage.

Defendant, Stephens, Inc. ("Stephens"), is an Arkansas private brokerage and investment banking firm licensed to do business in Louisiana, with an office in Shreveport. Jennifer Frierson ("Jennifer" or "plaintiff") and her husband, C.N. "Tannie" Frierson, Jr. ("Mr. Frierson"), are clients of Stephens and own four investment accounts registered in Mr. Frierson's name. Although the accounts in question appear to be similar to bank accounts, they are considered to be "securities" under Louisiana's version of the UCC. The accounts are registered in the name of Mr. Frierson, the effect of which is that he had sole authority over the accounts although there was

no separate property regime during the marriage. It is not clear from the record exactly how these accounts function or their exact nature; however, they appear to be investment accounts used, *inter alia*, to generate income to pay household expenses. All the parties agree that the accounts are classified as "incorporeal movables."

Mr. Frierson died on May 17, 2022. Five months prior to his death, when the couple learned of Mr. Frierson's terminal illness, he took several steps to provide financial security for Jennifer upon his incapacity and death.

On December 7, 2021, both Mr. Frierson and Jennifer went to the law office of Mr. T. Haller Jackson to make a change in Mr. Frierson's 2011 will. Mr. Frierson instructed Mr. Jackson to change a bequest he had made in the 2011 will that included the Stephens accounts that donated *mortis causa* the accounts to a testamentary trust for the children. He further instructed Mr. Jackson to now make that bequest of the Stephens account, among others, to Jennifer in a new will.

A month later, on January 10, 2022, Mr. Frierson went to the Shreveport office of Stephens. According to Jennifer, who apparently accompanied Mr. Frierson, her husband told the Stephens agent, Mike Hardison, that he wished to turn over his Stephens investment accounts to his wife. Stephens supplied Mr. Frierson with printed power of attorney forms to accomplish that end. On that date, Mr. Frierson completed and signed the forms giving powers of attorney to his wife with "full authority" over the accounts held at Stephens. An identical power of attorney for each of the Stephens accounts was signed before a notary by Mr. Frierson. Jennifer signed her acceptance and agreement to perform her duties on January 10, 2022, before the same notary and witnesses.

2

The durable power of attorney that Stephens supplied to Mr. Frierson lists the "Powers to be Granted to Agent" in Section 4 of the contract. Mr. Frierson initialed the box granting "Full Authority" to his agent, Jennifer. Relevant to this case, one of the provisions describing that full authority reads:

- Redeem or liquidate assets and securities in my Account(s).

- *Deliver or distribute assets and securities from any of my Account(s) and make payment of moneys, without restriction, to any one* or more persons (specifically *including my Agent himself or herself*) as my Agent may order and direct.

- *Transfer securities and assets from or among my Account(s)* including, but not limited to, initiating IRA rollovers and Roth IRA conversions.

- Establish new Account(s) in my name or on my behalf and modify *or terminate any existing Accounts.*

(Emphasis supplied.).

On March 22, 2022, 3½ months after Mr. Frierson asked Mr. Jackson to change the 2011 will, Mr. Jackson sent a letter to Jennifer stating he was sending her the new will for Mr. Frierson to sign along with the 2011 will. In the letter, Mr. Jackson wrote, "When he becomes well enough that a doctor certifies that he understands his actions, then we can proceed to have the new one signed." The will was never signed.

On April 27, 2022, 3½ months after Mr. Frierson executed the POAs giving her authority over the Stephens accounts, Jennifer contacted Mike Hardison, Stephens' local agent, and she advised him of Mr. Frierson's terminal condition and the need to transfer the assets of two of the investment accounts into two accounts in her name. Mr. Hardison requested Jennifer to send him an email "requesting specifically what you want transferred per Tannie's POA." The contents of Hardison's letter listed the

two accounts they discussed on the telephone, and Hardison further stated: "I will . . . convert your request into a LOA[1] and return to you for your signature." He also said, "I will forward to our compliance department to have them sign off on this."

The next day, on April 28, 2022, Jennifer went to Stephens' Shreveport office and gave Mike Hardison the following handwritten request, which reads:

4/28/22

Dear Stephens Inc—care of Mike Hardison

I am requesting to transfer all assets, etc from acc# ******3819 into a new account in my name Jennifer Frierson Investment.

I also would like to transfer all assets, etc the net assets of acct# ******5551 to another new acct in my name Jennifer Frierson Bond.

I have POAs over these accounts and my husband wants me to have these to do as I see fit, to take care of incurring expensives [sic], normal everyday living expensives [sic] & to pay income tax with as well.

Please do this in an expedite[d] manner. I appreciate your prompt attention and cooperation in this manner [sic].

Respectfully, Jennifer H Frierson
4/28/22

Stephens balked on Jennifer's request to transfer the accounts stating that the matter was being reviewed by their legal department. Ultimately, Jennifer obtained counsel who filed a petition for preliminary mandatory injunction and permanent mandatory injunction on May 9, 2022. Jennifer sought a mandatory injunction ordering Stephens to transfer the specific accounts registered in Mr. Frierson's name into new accounts under her

---

[1] Letter of Authorization.

name.  She alleged that the POAs gave her exclusive, unrestricted and unlimited authority as agent over Mr. Frierson's accounts.

One day after the petition was filed, Stephens' counsel from the firm of Jones Walker, Mr. Tyler Rench, sent a letter dated May 10, 2022 (seven days prior to Mr. Frierson's death), to Ms. Frierson's attorney, Rick Fayard, explaining its reasons for not honoring Jennifer's request.  The operative language reads:

> You are correct that Mr. Frierson's January 10, 2022 powers of attorney (all on the same form) authorize Mrs. Frierson, as agent, to "redeem or liquidate assets" and "deliver or distribute assets . . . to any one or more persons (specifically including [Mrs. Frierson] herself[.]"  *Yet, an agent delivering the principal's assets to herself— to use prudently and diligently **on behalf** of the principal—is different from an agent **gifting** the principal's asset to herself, and conveying ownership in the process.*  Here, the powers of attorney do not contemplate a transfer of ownership.  On the contrary, these instruments reinforce the concept of separate ownership, with Mrs. Frierson specifically agreeing to "keep [her] assets and property separate and apart from those of the Principal."

The letter goes on to state:

> We have no reason to doubt that Mrs. Frierson is carrying out Mr. Frierson's wishes.  *The problem is that the current powers of attorney do not confer the authority to donate*, and Louisiana and New York *law require that this power be specifically and expressly given.* [*citing* La. C.C. art. 2997(1)][2]  If you are in possession of a power of attorney from Mr. Frierson that specifically and expressly allows Mrs. Frierson to make *inter vivos* donations (gifts) to herself of Mr. Frierson's property, please forward that instrument, and Stephens can reassess the requests.

(Emphasis supplied.)

Acting on Jennifer's petition, the district court on May 11, 2022, issued an order for a rule directing Stephens to appear on May 23, 2022, to

---

[2] The article cited concerns donations made pursuant to mandate or power of attorney.  "Authority also must be given to: (1) Make an inter vivos donation, either outright or to a new or existing trust or other custodial arrangement. . . ."  La. C.C. art. 2997(1).  But see, *contra*: La. C.C. art. 2996: "The authority to alienate, acquire, encumber, or lease a thing must be given expressly.  Neither the property nor its location need be specifically described."

show cause why a preliminary mandatory injunction should not be issued directing Stephens to comply with the directions of Jennifer Frierson ordering the accounts to be transferred to the accounts in her name pursuant to her powers of attorney.

Five days prior to the scheduled hearing, Mr. Frierson died on May 17, 2022.

The hearing was held on June 20, 2022. The parties stipulated that none of the facts are in dispute and the matter will be submitted on the affidavits and exhibits of both parties. After oral argument, the district court concluded that the powers of attorney did not permit Jennifer to transfer the assets of the accounts into her own accounts. A final judgment was signed on July 1, 2022, denying the preliminary injunction and dismissing Jennifer's petition with prejudice.

This appeal followed.

## DISCUSSION

The sole issue in this case is whether the powers of attorney executed by Mr. Frierson months prior to his death gave his wife, Jennifer Frierson, full authority over the investment accounts held at Stephens, and authorized her to transfer the assets of those accounts into new accounts in her name.

Plaintiff contends that the key provision of the POA contract provides Jennifer with full authority to transfer assets from any of Mr. Frierson's Accounts to anyone, including herself, citing the provision that reads:

> Deliver or distribute assets and securities from any of my Account(s) and *make payment of moneys*, *without restriction*, *to any one* or more persons (specifically *including my Agent himself or herself*) as my Agent may order and direct.

6

Stephens contends that Jennifer's stated purpose for moving the accounts into in her name according to the letter delivered to Mr. Hardison was that Mr. Frierson wanted her to have these accounts to do as she sees fit and to take care of incurred and everyday expenses and income taxes. Stephens contends that this language demonstrates her intention to "gift (herself) the assets and transfer ownership." Stephens argues that Jennifer's statement "seems to indicate" an attempted donation *inter vivos* that would give her ownership of the accounts, but the powers of attorney do not authorize. Additionally, Stephens also points out in the letter that Ms. Frierson agreed to "keep my assets and property separate from those of the Principal."

For the following reasons, we conclude that Stephens' argument that Jennifer attempted to make a donation *inter vivos* to herself, and, as such, the POAs did not give her the authority to "gift" the assets of Mr. Frierson's accounts to new accounts in her name is without merit.

A power of attorney or mandate is a contract by which a person, the principal, confers authority on another person, the agent or mandatary, to transact one or more affairs of the principal. La. C.C. art. 2989. As such, it is governed by the law of contracts and obligations. La. C.C. art. 2990.

We are obligated to give legal effect to contracts according to the true intent of the parties. See La. C.C. art. 2045. The true intent of the parties to a contract is to be determined by the words of the contract when they are clear, explicit, and lead to no absurd consequences. See La. C.C. art. 2046. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. *Id.* In such cases, the meaning and intent of the parties to the written

7

contract must be sought within the four corners of the instrument and cannot be explained or contradicted by parol evidence. See La. C.C. art. 1848.

Interpretation of a contract within the instrument's four corners is a matter of law, and the use of extrinsic evidence is proper only if a contract is ambiguous after an examination of the four corners of the agreement. In cases in which the contract is ambiguous, the agreement shall be construed according to the intent of the parties. Intent is an issue of fact which is to be inferred from all of the surrounding circumstances. A doubtful provision must be determined in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and other contracts of a like nature between the same parties. La. C.C. art. 2053. Interpretation of ambiguous terms in a contract requires construction against the contract's drafter. La. C.C. art. 2056.

Hence, the first question is whether, looking within the four corners of the document, the Stephens POA is ambiguous. Whether a contract is ambiguous is a question of law and subject to the *de novo* standard of review on appeal. Where factual findings are pertinent to the interpretation of a contract, those factual findings are not to be disturbed absent manifest error. *Amitech U.S.A., Ltd. v. Nottingham Const. Co.*, 09-2048 (La. App. 1 Cir. 10/29/10), 57 So. 3d 1043, *writs denied*, 11-0866, 11-0953 (La. 6/17/11), 63 So. 3d 1036, 1043; *see*, *also*, *Redstone v. Sipes*, 53,416 (La. App. 2d Cir. 4/22/20), 294 So. 3d 1113.

On review, we conclude that the POA contract is not ambiguous such that parol evidence is required to determine Mr. Frierson's intent when he authorized "self-dealing" with respect to Jennifer's authority to transfer

8

money or assets in the accounts to herself. The clear meaning of the provisions gives Jennifer full authority to "redeem or liquidate assets" and "deliver or distribute assets . . . without restriction . . . to any one or more persons (specifically including [Mrs. Frierson] herself)[.]" Hence, Stephens' attempt to create an ambiguity with parol evidence and speculation about Jennifer's purpose or need in making the request in her handwritten letter to Mr. Hardison is parol evidence and inadmissible. Where the language of a contract is clear and unambiguous, the meaning and intent of the parties to the written contract must be sought within the four corners of the instrument and cannot be explained or contradicted by parol evidence. See La. C.C. art. 1848.

Furthermore, we find that the provision in the POA that the agent must "keep [her] assets and property separate from those of the Principal" is irrelevant and creates no ambiguity in these circumstances, especially since it has not been established that the accounts in Mr. Frierson's name were his separate property.

Accordingly, we conclude that Stephens' argument that the transfer request by Jennifer was an attempted donation *inter vivos* is a Strawman[3] interposed to obfuscate the question of whether the POA gave Jennifer authority to move the assets to accounts in her own name. Furthermore, we expressly do not reach the question of whether, notwithstanding the fact that the new accounts are registered in Jennifer's name giving her authority over the assets, the status of the decedent's and/or Jennifer's ownership interest of those assets is changed from Mr. Frierson's separate or community property

---

[3] A Strawman fallacy (sometimes written as strawman) is the informal fallacy of refuting an argument different from the one actually under discussion.

9

interest to the separate property of Jennifer. *See, e.g., Succession of Eikert,* 50,853 (La. App. 2 Cir. 12/7/16), 210 So. 3d 862, *writ denied*, 17-0244 (La. 3/31/17), 217 So. 3d 362 (where shortly before his death, the husband transferred money from his separate property bank account to the couple's community property joint account, and then from that account to spouse's separate property account, thereby making it a donation to her separate property under La. C.C. art. 1550). We find it unnecessary to consider the question of whether a donation *inter vivos* pursuant to La. C.C. art. 1550 occurred in this case.

We also conclude that it is unnecessary to decide whether the POAs remained in effect after Mr. Frierson's death pursuant to "power of attorney with an interest" doctrine. Since the requests by Jennifer concerning Mr. Frierson's accounts were made nearly three weeks prior to Mr. Frierson's death, we hold that all her requests regarding these accounts prior to the death of Mr. Frierson must be honored by Stephens retroactively.

We hold that to the extent that the POA granted Jennifer full authority over account number *****5551, which serves as a collateral account securing a loan from TriState Capital Bank, the POA shall remain in effect until any issues protecting TriState Capital Bank are resolved.

## CONCLUSION

For the reasons stated hereinabove, we hold that the powers of attorneys executed by Mr. Frierson to his wife, Jennifer Frierson, gave Jennifer the authority to transfer the assets in Mr. Frierson's accounts to accounts created in her name. Accordingly, the judgment of the trial court in this regard is reversed. Stephens is cast for costs of this appeal.

10

We remand this matter to the trial court for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

**COX, J., concurs with written reasons.**

I agree with the majority opinion; however, I write to bring out some additional points.

Stephens is a financial services provider. Stephens has offices outside the State of Louisiana but operates in the State of Louisiana.

Mr. Frierson wanted Ms. Frierson to have the ability to handle the Stephens accounts. When Stephens was approached with this request, an employee of Stephens gave the Friersons a power of attorney. This power of attorney was executed and returned to Stephens at least three months before Mr. Frierson could no longer execute agreements.

When Ms. Frierson attempted to move the accounts pursuant to the power of attorney, Stephens then balked and did not honor its own power of attorney stating Ms. Frierson was attempting to donate funds to herself.

Stephens does not have standing to bring this argument. The only action Stephens can do is honor the power of attorney. It is not for them to question the intent behind the power of attorney or motivation for its execution. Stephens has no ownership in these accounts as this money belongs to the Friersons.

It should be noted that none of the children, who would have standing to challenge the transfer of monies to another account, have joined in this suit. Stephens has stepped out of its lane as a financial representative and they and their attorneys have tried to impose their judgment in place of what both Mr. and Ms. Frierson wanted to do with these accounts. The power of attorney governs. Any intent of the parties is not for Stephens to challenge. All those matters, once the monies are transferred, will be decided in the

succession proceedings by the trial court if any challenges are raised by the

heirs to this succession.